Page 124-1725. Robert Goodrich, individually and in his capacity as trustee of the Robert D. Goodrich Revocable Trust and Balance v. Bank of America, trading as U.S. Trust Bank of America, Private Wealth Management, and Matthew Letinga. Mr. Costello for the balance, Mr. Schmolstadt for the appellees. Good morning, Mr. Costello. Good morning. May I please support Thomas Costello here with my partner Ann Preston on behalf of the appellant Robert Goodrich. This case is about Mr. Goodrich hiring investment professionals to provide him with investment advice on how best to manage his savings. The core of the complaint is essentially that Bank of America failed in that regard by failing to explain to him the catastrophic consequences of a complete liquidation of his investment portfolio right at the beginning of the COVID pandemic in late March of 2020. So when he called to give the instruction about selling, there was a conversation after the fact, you know, during that time period about, you know, some of the issues about how he would further kind of eradicate his savings. And then he had a second instruction that says, but go ahead and sell. Respectfully, Your Honor, I don't think the facts are quite as you've explained it there. I think the facts on the record reflect that during the month of March, his investment portfolio was declining in value. He had conversations with Bank of America about his concerns. And essentially, Bank of America, in response, provided an incomplete statement as to the consequences or risks of a portfolio liquidation. Essentially, what Bank of America explained is, if you sell now and go to cash, you might miss some of the upside when you decide to reinvest. What this whole case is about is what they didn't explain is that because Mr. Goodrich's unique financial situation was as follows. His investment account served as collateral for two lines of credit that Bank of America advised him to acquire, and that going to cash would not allow him to reinvest at some point because he would now realize these losses in his account, bring down the value of the account at this cash level to where he would only have a small percentage of his assets to reinvest above the collateral limits. What if the facts were a little different in the sense that there was an instruction to sell, then Bank of America said, just ignored it or just didn't do it timely, just waited maybe 10 days or so, and then it continued to decline. Would we still be here? Well, the terms of the relationship with Bank of America provide Bank of America with what they describe as complete investment authority. So, the exception of having an instruction from a client that tells them to do something specific. If the client goes to Bank of America and, as you say, as you phrase it, gives them an instruction, it's our position in this case that their fiduciary obligations as money managers would require them to explain all the consequences of acting on that instruction, and that did not happen when they view the facts most. You've got to convince us that language in the contract which says that our liability is limited to what this contract says and not essentially tort or common law claims. You've got to convince us to not enforce that language, which your client, which was in the agreement that your client signed. Sure, and I think we provide multiple legal theories for finding that the contract does not prevent the claims that are set forth in the complaint. First and foremost, to the extent the contract, which never says this, by the way, that they're disclaiming their fiduciary obligations. It says tort or common law, but your breach of fiduciary duty claim and your gross negligent claim are either tort or common law or both. Okay, well, I think the contract would have to explain what that means because people who read that 60-something page booklet after they get it don't know what a tort is and don't know what the common law is. You're saying that the law in the District of Columbia would require for an exclusion of that nature to be enforced that you have to define all relevant terms? Yes, if you're going to, the law of the District of Columbia and the primary case is the Moore versus Wallace case. If you're going to have an exculpatory clause, a disclaimer, it must be clear and unequivocal. And the problem- That's different than saying every term has to be fine. Well, if you're going to be- What's unclear about saying you can't bring a tort or common law claim? What's unclear about that? Because other than a lawyer, people aren't going to understand that. How about this one? Bank of America is responsible for the performance of only such duties as are specifically set forth in this agreement with no implied duties or responsibilities. Again- And it's clear as day. Respectfully, I don't think that would be clear to a retail consumer of investment management services. But getting back to it, one, Bank of America is prohibited by the Investment Advisors Act under the D.C. Securities Act and the Securities Act of 1934 from contracting away their obligations of full disclosure when serving- Under the Securities Act. I'm sorry? Under the Securities Statute. Right. The Securities Statute say you cannot contract away your obligations. But you have already a claim under those statutes. We did bring a claim under the D.C. Securities Act. Right. But we're talking about the common law claims right now. Okay. So, first of all, it's in our papers. We think under those statutory schemes, they're not allowed to disclaim their fiduciary obligations. Secondly, with regard to just the law of the District of Columbia with regard to disclaimers and exculpatory clauses, it's not clear. Because at the same time they hand him this booklet after the fact, after he's initiated his relationship, never explaining to him that, hey, by taking possession of this booklet, you're waiving legal rights. At the same time, they give him documents which say, we are fiduciaries. We are going to handle your accounts at the highest standard. We do have complete investment authority. They're also giving him promotional materials that say they are fiduciaries and will honor fiduciary obligations. So, when you hand a client all kinds of documents like that that contradict each other, it is not clear and unequivocal. What about this one? Owner will be liable for any losses resulting from owner's instruction. To the bank. I don't think that that language is unclear. However, in this situation, that doesn't excuse Bank of America's obligation that if they perceive that a customer is giving them an instruction, they have to explain the consequences of acting on that instruction, and they did not. And there were losses resulting from the instruction to sell. He calls up, they sell. Again, I think there's a factual dispute as to one, they are the discretionary money manager. They are the ones who they describe themselves as having complete investment authority. They are the ones who choose to accept the instruction or not under that discretionary authority. You think they have discretion to disobey a client instruction? They did that in this case, and it's alleged in the complaint when Mr. Goodrich asked to have his money reinvested, and he said they said no. So, yes, those are the facts of the case. So, with regard to that issue, one, we think the securities law statutory scheme prohibits the disclaimer of fiduciary responsibilities. We think that the booklet itself is not clear and unequivocal in terms of it disclaiming its fiduciary obligations. We think that the fact that Bank of America provided Mr. Goodrich with other documents that he signed and which were agreements that said they would be a fiduciary and manage the account and the fiduciary obligation and act to the highest standards, then, again, that makes those disclaimers not clear and unequivocal. Can you address the Sienta requirement with respect to the District of Columbia? Yes, ma'am. So, the Sienta requirement is satisfied by demonstrating not only intentional conduct but reckless conduct, and reckless conduct can be evidenced by a financial advisor failing to disclose known risks to a client in connection with a transaction. But did you agree that that's an issue of first impression, at least with respect to the D.C. that talks about recklessness and Sienta? I would agree with you, but other jurisdictions dealing with that issue under the securities law have uniformly found that recklessness does satisfy the Sienta requirement, and there are legal authorities out there, specifically a case called Kerr v. Smith-Barney, that an advisor who knowingly fails to disclose known risks to a client satisfies the recklessness aspect. Should we allow the D.C. Court of Appeals to address Sienta requirement with respect to this D.C. securities law? Obviously, that's your prerogative. I think because this issue of Sienta and the issue of recklessness satisfying the Sienta requirement being pretty universal, I don't know that it's necessary. I do think the other issue of whether you even have to prove Sienta under the D.C. Securities Act is an issue of first impression and is not clear. The D.C. Securities Act is based on the Uniform Securities Act, and the jurisdictions are split as to whether Sienta is required. So that would be an issue of first impression for the District of Columbia. We'll give you some time on rebuttal. Thank you, sir. Good morning. Good morning, and may it please the Court, Brian Schmalzbeck for the defendants. At the start of a global pandemic, Mr. Goodrich ordered his investment manager to sell his entire portfolio against that manager's recommendation just before the market's opening bell. Now, he's suing that investment manager for following his instructions. This Court should affirm, because faithfully executing a client's urgent financial instruction is neither a breach of fiduciary duty nor securities fraud. So do you believe that as soon as the instruction comes in, you follow it, or is there any fiduciary duty or obligation or any other duty with respect to just kind of talking that client off the ledge? They paid for advice. So here, Your Honor, I would say start with the context, which is that this is a conversation starting at 9 o'clock, went 10 or 20 minutes before the 9.30 opening bell. But I would say no. Both the contract and the third restatement of agency are clear that when you get an instruction from a client, you follow it. And we did go above and beyond and say that this is not consistent with your long-term strategy. And Mr. Goodrich said, I don't care. I can't handle the risk. Client is hiring you for the advice. They are not the expert. And so when you say just get the instruction and you just follow it, that just sounds against why they hired you, the reason for why they hired you. Your Honor, and I want to make clear that the scope of what Bank of America was hired for is laid out in the contract. So I think we need to consult the contract to answer that question. And there's three specific parts I would point you to. They're both on JA-231. They're all three are on 231 and 232. The first on 232 is that there's no duty to advise on what the client's own investment objectives are. We take as a given what you want to accomplish when you invest your money. The second is that there's no duty to advise when a client directs you to make specific investment choices. Because you're right, in the ordinary course, we would make decisions on Mr. Goodrich's behalf and we would have a duty to do that with care and with loyalty. But on page 231, the agreement is very clear that when you tell us specifically what to do, then we are just a custodian. Then we are just executing your orders. We don't have a duty to advise or ensure it's consistent with your strategy otherwise. But if you do go further and you do advise, then what is the scope of any potential liability? Well, you're right. I think the fact that we tried to talk him out of this instruction and he couldn't be budged doesn't mean that we've undertaken some, that we've changed that part of the contract. And the contract does have an anti-waiver provision that says, by undertaking that limited duty, we're not changing what the contract says about when you give us a specific instruction, we're just acting as a custodian. The question I asked earlier, if the client then instructs you to do something, like sell, and you wait five days, you wait 10 days, and you don't do it then, do you then agree that you have liability because you didn't follow the instruction? I think we may well, Your Honor. And I want to point out an important difference between this case and the Trumbull case in the Fourth Circuit. And it's a difference in contractual language. What the contract in Trumbull says is that the investment manager shall, in its discretion, follow and rely on client instructions. There's no language like that in this contract. I think we would have a very hard time succeeding in the argument that we have discretion to disobey client instructions. And to be clear, Your Honor, the hypo that you just posited, where we wait five days to execute this instruction, that's not waiting, that's outright disobedience. Because the instruction here was, sell at the open, I think the market's going to crash, I want to get out now. And so if we waited five days, very likely, we would be facing a lawsuit coming from the other perspective, saying you didn't obey my instruction, and you're liable for that. Let's suppose what had happened is that he calls, and then he hears, he says sell, but they say don't sell, and they say what they said, and he's like, okay, I agree. Don't sell, just do what you think is best. And the investment advisor purchases, changes his, buys some stock that everyone agrees was a reckless purchase, and he loses his investment. Does he have a breach of fiduciary duty claim? I think he might, if in that circumstance, if I understand it correctly, that we don't have an instruction to rely on. We just have the ordinary contractual fiduciary obligation to invest with due care and with loyalty to him. And there, we couldn't say that we're relying on this instruction. We couldn't rely on these provisions on page 231 and 232 of the joint appendix, because there's no instruction. He just says, use your judgment. At that point, yes, we would have no contractual defense to the sort of claim that you could make in that circumstance. So you believe that the exclusion of common law and tort claims doesn't apply generally, it just applies where there's an instruction? I think it could also apply generally. I just think it's a more straightforward argument here to say we didn't sign up to be an all-purpose fiduciary. I think that's the fundamental legal error that my friend is making. I'm trying to understand how the exclusion, is it an exclusion only in some circumstances, in all circumstances, or no circumstances? So your honor, to be clear, there would still be a claim for gross negligence in the hypothetical that you posited, because that's not disclaimed in the agreement. So that's the sort of grossly negligent breach of fiduciary claim that Mr. Goodrich is making here, and I hypothetical then he could also press that claim, because that's not disclaimed by the contract. But the broader point I want to make is that there's not some freestanding rule that if you dip a toe in the fiduciary waters, you have to go all the way in up to your neck, because that's not what the restatement says. The restatement in section 8.01 says that the scope of your fiduciary duties is controlled by your agreement. You don't have to take on more duties than you've agreed to take on. But your honors, we've talked about the breach of fiduciary duty claim. I'd like to briefly address an alternate ground for affirming the dismissal of that claim, and that's that there's no gross negligence pleaded. And I know there was some, these were addressed as separate issues in the district court, but there's a concession at pages 14 to 15 of Mr. Goodrich's reply brief here, which is that he's not asserting an ordinary negligence breach of fiduciary duty claim. The only breach of fiduciary duty claim here is one for gross negligence. And so that means that the inability, the failure to plead gross negligence in the complaint, that resolves this whole breach of fiduciary duty claim as well. It's an alternate ground that you can rely on. And the district court was right in addressing the gross negligence claim that he can't meet the very high standard under the Hawkins case for gross negligence under D.C. law. First, there's no bad faith here. There can't be bad faith. We tried to talk him out of it. This is not our idea. And we tried to get him not to give that instruction, but he insisted on the instruction. And second, there's no risk so obvious that the defendant must be aware of it, and so great that it's highly probable that harm would fall. And it's just implausible to assert here that we predicted the future of the market and how it would affect his account. And do you agree that this instruction nullifies all of the other written materials that the client was given? Are you referring to... In other words, the oral instruction nullifies all the other written materials with respect to the advice and how you carry out the fiduciary relationship. That instruction just closes off everything else. That instruction does control. And the contract, the investment services agreement, anticipates this problem. And it doesn't say, for example, that you can only change your investment objectives in writing. You can only provide a controlling instruction in writing. It acknowledges that there are scenarios where oral instructions will be necessary. And this is a great example of why. If he has this urgent instruction, I need it carried out post haste before the market crashes. If we say, oh, no can do. You need to submit it in writing. We can't obey that instruction. And he would lose the benefit of giving that instruction. So yes, Your Honor, an oral instruction is anticipated by this agreement. I'd like to briefly address the D.C. Securities Act claim. Your Honor, scienter is required. The complaint says that we, quote, engage in a scheme, device, and or artifice to defraud. That's at J.A. 199. That's quoting the language of Section 2A1A of Section 560502, which in turn is quoting Rule 10B5. And the district court correctly applied the old soil principle that when you take that exact language from Rule 10B5, transplant it into the D.C. Securities Act, it brings the old soil with it. And Judge Childs, to your question, I don't think there's any need to certify that question. It is a remarkably specific transplantation of that language. And so there's no, I'm not aware of any case, and none has been cited in the briefs, that when you bring that exact language from Rule 10B5, where it's long been established that it has a scienter requirement, that in the transplanted blue sky law, it has that same scienter requirement. I know my friend mentioned that there's a split in jurisdictions. There's no split in jurisdictions on the language in the complaint on this scheme, device, or artifice to defraud. There are other provisions of typical blue sky statutes that do not require scienter, but the complaint is very clear that it's Section A1A that's asserted here. That's the claim that the district court addressed, and the opening brief didn't say anything about any other claim. So there's no, I don't think there's any ambiguity on the scienter requirement applying there. The scienter requirement is much closer for A1B. Your position is that just wasn't asserted in the complaint? It wasn't asserted in the complaint. I quoted the operative language of the complaint, which is quoting A1A. And any argument about A1B is waived here, Your Honor, because the district court was very clear in the opinion that it's an A1A claim. And the district court was clear that argument that it's actually a hidden A1B claim was not briefed below, and it wasn't mentioned in the opening brief later. So it's waived twice over. And just on applying the scienter requirement here, Your Honors, this is a remarkably implausible theory. Again, there's no intentional fraud. We tried to talk him out of it. This isn't something bad that we got him to do. We tried to get him not to do it. There's no allegation that Bank of America benefited from the sale. To the contrary, this account is structured in a way that when the customer does well, the bank does well. It's by a proportion of assets under management. The theory instead seems to be that we should have tried even harder to talk him out of this instruction right before the market opened. But I doubt that that could even satisfy the requirement for ordinary negligence. But certainly here, it doesn't come remotely close to meeting the requirement for intentional wrongdoing or extreme recklessness. So if the court has no further questions, we'd ask you to affirm. Thank you. Mr Costello will give you two minutes for rebuttal. Thank you, Your Honor. Briefly, my colleagues said that they were obligated to the instructions of Mr. Goodrich. They did not follow the instructions of Mr. Goodrich when he asked to be reinvested. This is a factual dispute as to what constitutes an instruction and what their complete discretionary investment authority would be. They can't have it selectively. They can't do it both ways. And the information in the record is that they're selectively choosing. There is a duty to advise a client when a client proposes an imprudent transaction that authorities set forth in the briefing. The contract says that the only duties they have, or the terms booklet says, the only duties they have are what are set forth in the terms booklet. The terms booklet doesn't set forth any duties. All it does is provide a series of outs for Bank of America. It doesn't say what they're going to do. The only contract they gave him that said what they were going to do said they were going to be fiduciaries and said that they were going to act to the highest standard. So the contract, a contract which doesn't set forth any duties, again, cannot be held to obviate my client's claims in this case. With regard to the gross negligence, again, recklessness, consciousness behavior, those things satisfy the gross negligence standard. We cited the authorities for that. Here, it is alleged that Bank of America knowingly executed a transaction which they understood would cause catastrophic losses for my client. With regard to the D.C. Securities Act, again, SIENTA can be satisfied by recklessness, conscious indifference, and we've cited specific authorities that say an advisor who knows of a known risk and doesn't share it with a client prior to a transaction is acting recklessly. So with that, I thank you for your time. Thank you. Matter is submitted.
judges: Wilkins; Katsas; Childs